**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**SECURITIES & EXCHANGE**
**COMMISSION,**

       **Plaintiff,**

**v.**                                            **Case No.  8:02-mc-94-T-17TBM**

**TERRY L. DOWDELL, et al.,**

       **Defendants.**

_____/

**O R D E R**

THIS MATTER is before the court on the **Limited Objection and Motion to Quash Subpoena Duces Tecum Directed to Robert D. Barcley and Robert D. Barcley, P.A.** (Doc. 2), memorandum in support (Doc. 3), the Receiver's response in opposition (Doc. 4), and the movants' supplement to the motion (Docs. 7, 8);[1] and the **Limited Objection and Motion to Quash Subpoena Duces Tecum Directed to Jay Verona** (Doc. 5) and memorandum (Doc. 6) and the Receiver's response (Doc. 9).  A hearing on the motions was conducted on April 19, 2006.

At the hearing, the court determined that an *in camera* review was warranted and would be useful for the court's determination of the claims of privilege.  As directed by the court, Mr. Verona submitted for *in camera* review the documents withheld on the basis of

---

[1]Although the movants' supplement to the motion and memorandum in support (Docs. 7, 8) are filed in contravention of Local Rule 3.01(b), the court will consider them as filed. See M.D. Fla. R. 3.01(b).

attorney client privilege, and the Receiver filed under seal his affidavit supplementing the

allegations in his responsive pleadings.[2]


I.

This matter arises from the underlying litigation of <u>Securities & Exchange</u>

<u>Commission v. Terry L. Dowell, et al.</u>, Civil Action No. 3:01CV00116, in the United States

District Court for the Western District of Virginia.  On July 12, 2002, the Honorable B.

Waugh Crigler entered an Order Directing Appointment of Receiver over Defendants Terry

L. Dowdell, Dowdell, Dutcher & Associates, Inc. and Emerged Market Securities, DE-LLC

(Doc. 1). By this Order, the court appointed Roy M. Terry, Jr., and the law firm of

DurretteBradshaw PLC as Receiver for the following purposes among others:

> to marshal, conserve, protect, hold funds, operate, and with the
> approval of the court dispose of any wasting assets, wherever
> those assets may be found, of Defendants Terry L. Dowdell
> ("Dowdell"), Dowdell, Dutcher and Associates, Inc. ("DDA"),
> Emerged Market Securities, DE-LLC ("EMS"), or the affiliated
> entities of Dowdell, DDA and EMS, including but not limited to
> . . . , and all other assets owned, controlled or in the possession
> of Dowdell, . . . , including assets that have been transferred to
> other persons or entities but as to which assets such persons or
> entities do not have a legitimate claim (collectively the
> "Receivership Property").

(Doc. 1 at ¶ 1). The court further authorized the Receiver to effectuate the following:

---

[2]Also pending before the court is the Receiver's **Motion to File Affidavit Under Seal
and for other Relief and Memorandum of Points and Authorities** (Doc. 13).  Upon
consideration, the motion is **GRANTED**.  The Clerk is directed to file the Affidavit of
Douglas Scott under seal.

2

(d) Take such action as necessary and appropriate to prevent the dissipation or concealment of any funds or assets constituting Receivership Property and otherwise preserve any such funds and assets;

(e) Issue subpoenas to compel testimony of persons or production of records, consistent with the Federal Rules of Civil Procedure and the Rules of Court concerning any subject matter relating to the identification, preservation, collection and/or liquidation of the Receivership Property, or otherwise related to the discharge of the Receiver's duties.

(Doc. 1 at ¶ 2).  According to the Receiver's pleadings, Terry L. Dowdell orchestrated and operated a Ponzi scheme (hereinafter "Vavasseur fraud") from April 1998 through 2001, thereby bilking investors of an estimated $121 million.[3]  Dowdell pleaded guilty to charges related to the fraud and is currently serving a fifteen-year sentence.  Robert F. June, Jr., was an employee and close friend of Dowdell, and he was in insider of and profited from the Vavasseur fraud.[4]

On March 17, 2003, the Receiver filed a disgorgement case, Terry v. June, No. 3:03cv00021 (W.D. Va.), against Mr. June and his controlled entities, VRJ, Ltd., and VRJ, LLC, to recover money and property obtained unjustly from the Vavasseur fraud.  However, despite considerable efforts and expense, the Receiver has been unable to serve the summons

_____

[3]In support of his argument, the Receiver recites from findings made in the district court for the Western District of Virginia.  Terry v. Virginia June, No. 3:03CV00047, 2003 LEXIS 12873 (W.D. Va. July 21, 2003).

[4]The Receiver maintains that his investigation reveals that June was responsible for investigating new high yield investment programs for Dowdell and that he brought new investors into the Vavasseur scheme.  Given his expertise, the Receiver urges that June was fully aware of the scam and profited handsomely from it, as did his family members and close friends.  Significantly, the Receiver can trace a portion of the funds realized from the Vavasseur fraud to June and demonstrates that  $170,011.59 of these funds were used to purchase the condominium.

and complaint on June.  Through his investigation, the Receiver also learned that June

purchased a condominium at 3001 Landmark Blvd #104, Palm Harbor, Florida, which he sold

by Warranty Deed from Robert F. June, Jr., to Edward D. Turner dated October 7, 2005.  The

Receiver thereafter caused subpoenas to be served upon Robert D. Barcley and Robert D.

Barcley, P.A. (hereinafter, collectively, "Barcley") and Jay Verona and Verona Law Group,

P.A. (hereinafter, collectively, "Verona"), seeking the production of documents relating to

Robert F. June, Jr., including documents concerning the sale of the condominium.  Barcley

and Verona represented June in this transaction.  The Receiver thus seeks information

concerning the transfer of the condo from June to Turner, in particular, information

concerning the whereabouts of June so that he can effect service on June in the disgorgement

case against him.

    By their limited objections and motions to quash, Barcley and Verona argue that the

communications between Barcley and June, Verona and June, and Barcley and Verona fall

within the scope of attorney-client privilege because both Barcley and Verona represented

June in connection with the real estate transaction in question.[5]  Citing to Rule 501 of the

Federal Rules of Evidence, they rely on Florida Statutes section 90.502, which provides in

pertinent part:

> (2) A client has a privilege to refuse to disclose, and to prevent
> any other person form disclosing, the contents of confidential
> communications when such other person learned of the
> communications because they were made in the rendition of
> legal services.

---

[5]Mr. Verona indicates that non-privileged documents that fall within the scope of the
subpoena have been produced.

Fla. Stat. ch. 90.502(2).  They urge the court to sustain their objections and to quash the subpoenas.

In opposition, the Receiver argues that federal common law applies, since the subpoena was issued in a federal question case, rather than in a case based on diversity jurisdiction.  As to the particular subpoenas at issue, the Receiver argues first that a client's identity and contact information are not ordinarily protected by the attorney-client privilege and that the attorney-client privilege does not otherwise protect information that June would be required to produce, information disclosed by him to third parties, information constituting business advice instead of legal advice, tax information, entries unrelated to legal representation, billing statements, inter-attorney communications that do not communicate confidences, or matters related to the identity and location of the client.  The Receiver further argues that, to the extent that the materials are privileged under the attorney-client privilege, the material sought falls within the crime-fraud exception and should therefore be disclosed.

At arguments, Mr. Verona clarified that he has never asserted the attorney-client privilege to protect the whereabouts of Mr. June; he is unaware of Mr. June's location or address, aside from the condo address; he does not send bills or correspondence to Mr. June; and he did not redact Mr. June's address from the documents in question.  Mr. Verona does not dispute that Mr. June is seeking to conceal his location in order to evade civil process. However, he suggests that Mr. June is doing so in order to avoid the costs associated with defending an action brought against him and that such actions by Mr. June do not necessarily reflect his culpability in the Dowdell ponzi scheme or liability for fraud.

II.

The applicability of privileges in federal proceedings is governed by Rule 501 of the

Federal Rules of Evidence, which provides:

> Except as otherwise required by the Constitution of the United
> States or provided by Act of Congress or in rules prescribed by
> the Supreme Court pursuant to statutory authority, the privilege
> of a witness [or] person . . . shall be governed by the principles
> of the common law as they may be interpreted by the courts of
> the United States in the light of reason and experience.
> However, in civil actions and proceedings, with respect to an
> element of a claim or defense as to which State law supplies the
> rule of decision, the privilege of a witness [or] person . . . shall
> be determined in accordance with State law.

Fed. R. Evid. 501.  Because the underlying litigation from which these subpoenas were issued

is based on federal question jurisdiction, the applicability of the attorney-client privilege and

any exceptions thereto are governed by federal common law.[6]

The attorney-client privilege is one of the oldest privileges recognized in common

law.  Swidler & Berlin v. United States 524 U.S. 399 (1998) (citing Upjohn Co. v. United

States, 449 U.S. 383, 389 (1981); Hunt v. Blackburn, 128 U.S. 464, 470 (1888).  This

privilege protects communications between a client and his attorney made in confidence and

for the purpose of securing legal advice or assistance.  Cox v. Adm'r U.S. Steel & Carnegie,

17 F.3d 1386, 1414 (11th Cir. 1994).  The attorney-client privilege is intended to encourage

"full and frank communications between attorneys and their clients and thereby promote

broader public interests in the observance of law and administration of justice."  Upjohn Co.

---

[6]The parties do not suggest, however, that any difference exists between state law and
federal common law or that any such difference is substantively significant in this instance.

v. United States, 449 U.S. 383, 389 (1981), quoted in Swidler, 524 U.S. at 403; United States

v. Almeida, 341 F.3d 1318, 1324 (11th Cir. 2003).  "The party invoking the attorney-client

privilege has the burden of proving that an attorney-client relationship existed and that the

particular communications were confidential, intended to remain confidential, and under the

circumstances were reasonably expected and understood to be confidential.  Bogle v.

McClure, 332 F.3d 1347, 1358 (11th Cir. 2003) (quoting United States v. Schaltenbrand, 930

F.2d 1554, 1562 (11th Cir. 1991); United States v. Bell, 776 F.2d 965, 971 (11th Cir. 1985)).

The attorney-client privilege does not include all communications between attorney

and client; as a matter of law, it is construed narrowly so as not to exceed the means necessary

to support the policy which it promotes.  In re Grand Jury Matter No. 91-0186, 969 F.2d 995,

997 (11th Cir. 1992) (citing Fisher v. United States, 425 U.S. 391, 401 (1976)).  For example,

the identity of a client and the receipt of attorney's fees normally are not privileged matters.

See United States v. Leventhal, 961 F.2d 936, 940 (11th Cir. 1992); In re Grand Jury, 969

F.2d at 997.  Other district courts have specifically held that billing records, hourly

statements, and fee arrangements which do not reveal client communications are not protected

by the attorney-client privilege.  See Fed. Trade Comm'n v. Cambridge Exch., Ltd., 845 F.

Supp. 872, 874 (S.D. Fla. 1993) (citations omitted).  An attorney who acts as his client's

agent for receipt or disbursement of money or property to or from third parties is not giving

legal advice, and thus records of such transactions, including trust account information, are

generally not privileged.  See United States v. McQuillan, No. 93-134-MISC-T-23A, 1994

WL 692851, at *2 (M.D. Fla. Dec. 12, 1994) (quoting In re Grand Jury Subpoena (Lipnack),

831 F.2d 225, 227-28 (11th Cir. 1987)); see also Pollock v. United States 202 F.2d 281 (5th

Cir. 1953) ("Where the attorney is a mere scivener or the transaction involves a simple transfer of title to real estate and there is no consultation for legal advice, it has been held that communications to an attorney are not privileged.") (citations omitted).

Additionally, under the crime-fraud exception, the attorney-client privilege does not extend to communications made for the purpose of furthering a crime or fraud.  See United States v. Zolin, 491 U.S. 554, 562-63 (1989); In re Grand Jury Proceedings, 142 F.3d 1416, 1419 (11th Cir. 1998).  The Eleventh Circuit has established a two-part test for determining whether the crime-fraud exception applies: (1) there must be a prima facie showing that the client was engaged in criminal or fraudulent conduct when he sought the advice of counsel, that he was planning such conduct when he sought the advice of counsel, or that he committed a crime or fraud subsequent to receiving the benefit of counsel's advice; and (2) there must be a showing that the advice of counsel was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.  Cox, 17 F.3d at 1416 (citing In re Grand Jury Investigation (Schroeder), 842 F.2d 1223, 1226 (11th Cir.1987)).  The exception applies to work product in the same way that it applies to the attorney-client privilege and is one of the rare and extraordinary circumstances in which opinion work product is discoverable. Cox, 17 F.3d at 1422.  The crime-fraud exception does not remove the protection of privileges from communications concerning past or completed crimes or frauds.  In re Federal Grand Jury Proceedings, 89-10 (MIA), 938 F.2d 1578, 1581 (11th Cir. 1991).

III.

Upon *in camera* review of Mr. Verona's submissions, the court finds that the movants

shall respond to the Receiver's subpoena and produce some of the documents as follows:

Item 1:  Counsel's meeting notes are protected by the attorney-client privilege and/or work

product doctrine, with the exception of the client's contact information written at the

top of the first page of this document.  This portion of the document should be

produced.

Item 2:  The August 9, 2005, File Opening Instructions is not protected by the attorney-client

privilege and should be disclosed in full.

Item 6:  While the August 26, 2005, correspondence contains legal advice and is protected by

the attorney-client privilege, the upper portion of the email reflecting an email address

and subject is not privileged information.  Therefore, Mr. Verona shall produce this

portion of the document.

Item 10:  The Category report for the closing of the sale of the condominium summarizing the

transfer of moneys into and out of Mr. Barcley's trust account is not privileged and

should be produced in full.

Item 11:  Handwritten communication from June to Mr. Barcley regarding the disposition of

proceeds from the sale of the condominium is not protected by the attorney-client

privilege.  Here, Mr. Barcley's services were to effectuate the transfer of the real

estate in question.  There is no indication that he ever provided legal advice to Mr.

June or that Mr. June sought legal advice from him.

9

Item 12:  The Bank statement relating to Barcley's attorney trust account is not protected by

the attorney-client privilege and should be produced.[7]

Item 13:  Mr. Verona's time records are only privileged to the extent that the explanations of

the time expended reflects legal advice or counsel's work product.  Thus, the

following entries should be redacted prior to production: entry number 2589 for work

performed on 8/28/05; entry number 2590 for work performed on 9/15/05; as to

communications with client reflected in entry number 3352 for work performed on

9/27/05, entry number 3466 for work performed on 9/30/05, and entries numbered

3618 and 3624 for work performed 10/4/05; and work performed on 08/09/05,

08/15/05, 08/16/05, and 08/17/05 appearing on the third page.  The remainder of the

document is not privileged and shall be produced.

Items 14-15:  The February 1, 2006, correspondence from Barcley to Verona and the

February 3, 2006, correspondence from Verona to Barcley are not privileged.  At the

times made, neither implicated the attorney-client privilege, and both documents

should be produced.[8]

---

[7]Based on counsel's representation that the redacted entries are wholly unrelated to
June, the court finds that production of this document as redacted will satisfy counsel's
obligation under this Order.

[8]It appears that on and after February 6, 2006, Mr. Verona undertook to represent Mr.
Barcley in relation to objecting to the subpoenas.

10

IV.

Accordingly, it is **ORDERED** that **Limited Objection and Motion to Quash Subpoena Duces Tecum Directed to Robert D. Barcley and Robert D. Barcley, P.A.** (Doc. 2) and **Limited Objection and Motion to Quash Subpoena Duces Tecum Directed to Jay Verona** (Doc. 5) are **GRANTED in part and DENIED in part**.[9]  Mr. Verona shall promptly contact chambers to arrange for the retrieval of the *in camera* submission. Counsel shall make production ordered hereby within ten (10) days from the date of this Order.

**Done and Ordered** in Tampa, Florida, this 15th day of May 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record

---

[9]Given the nature of the matters sought by the Receiver, the court declines, at this time, to conduct further proceedings related to the crime-fraud exception.

11